UNITED STATES DISTRICT COURT
FOR THE
DISTRICT OF VERMONT

| | |
|---|---|
| DANIEL MELO, | ) |
| | ) |
| Plaintiff | ) Case No. 2:10-cv-104 |
| | ) |
| v. | ) |
| | ) |
| ALLSTATE INSURANCE COMPANY, | ) |
| | ) |
| Defendant | ) |

**PLAINTIFF'S MOTION IN LIMINE RE:  MEDICAL SPECIALS & LOST WAGES**

NOW COMES the Plaintiff, by and through his counsel, Bergeron, Paradis & Fitzpatrick, LLP, and hereby moves *in limine* for the Court to issue the following pre-trial order:  (1) to define the "reasonable value" of Plaintiff's medical bills to be the amount Plaintiff's healthcare providers charged the Plaintiff for his care, and not the amount that Plaintiff's healthcare providers received from Plaintiff's health insurance; and (2) to exclude from evidence any testimony, references and/or arguments that Plaintiff's lost income should be limited to an after tax amount.  In support of this motion, Plaintiff relies on the following Memorandum of Law.

**MEMORANDUM**

I.   **INTRODUCTION**

This UIM action arises from a catastrophic motor vehicle accident that occurred at approximately 2:00 a.m. on October 4, 2008 on Spear Street in Burlington.  As the Plaintiff traveled up the one-way incline on Spear Street, just south of Main Street, he was struck head-on by a vehicle operated by Michael Lewis traveling the wrong way down the one-way portion of Spear Street at an estimated speed of 82 miles per hour.  Mr. Lewis was fleeing the South Burlington Police when he collided head-on with the vehicle operated by the Plaintiff.  As a

result of the collision, two passengers in Mr. Lewis' vehicle were killed and Plaintiff sustained serious and permanent injuries including a right tibia fracture, left ulna fracture, left elbow radial head dislocation and a perforation of his intestines. He was hospitalized for 19 days and underwent extensive outpatient care. These medical costs to date total $149,816.17. Plaintiff will also require future surgeries and will have significant future medical expenses.

Additionally, Plaintiff sustained a significant loss of income from his dental practice as a result of the accident. Plaintiff is the owner of Shelburne Dental Group located in Shelburne, Vermont. He was unable to work from October 4, 2008 to January 4, 2009, and has loss of income totaling $174,231.00.

Plaintiff purchased two policies of insurance from Defendant which both provide underinsured motorist coverage. This action is a suit in contract to recover damages under those policies. Defendant has conceded liability and the only issue remaining is the amount of Plaintiff's damages.

Plaintiff asserts that his medical services should be valued at the amounts actually charged by his health care providers. Defendant contends that the value of Plaintiff's medical bills should be limited to what Plaintiff's insurance carrier paid for those services and not the amounts billed by the medical providers. Moreover, Plaintiff asserts that the reimbursement for lost income should be valued at his net operating income after business expenses but before taxes. Defendant contends that the value of Plaintiff's lost income should be his income remaining after taxes. These arguments will be addressed in turn below.[1]

---

[1] Defendant through its counsel confirmed its intention to pursue these issues in an email attached hereto as Exhibit A.

2

## II. THE COLLATERAL SOURCE RULE PREVENTS DEFENDANT FROM REALIZING A SETOFF FOR PAYMENTS MADE TOWARDS PLAINTIFF'S MEDICAL EXPENSES BY INSURANCE PROCURED BY THE PLAINTIFF

Vermont's collateral source rule has been in existence for more than a century. It makes clear that "in actions for injuries resulting from fire or accident the fact that plaintiff has received compensation by way of insurance cannot be shown in reduction of damages." *Northeastern Nash Auto. Co. v. Bartlett*, 100 Vt. 246, 258 (1927). "The 'collateral source rule' allows a plaintiff full recovery against a tortfeasor even where he is otherwise compensated by a source independent of the tortfeasor." *Coty v. Ramsey Assocs.*, 149 Vt. 451, 462 (1988) (citing *My Sister's Place v. City of Burlington*, 139 Vt. 602, 612 (1981). Thus, the rule "den[ies] to a defendant a setoff for payment the plaintiff receives from a third, or collateral, source." *Hall v. Miller*, 143 Vt. 135, 141 (1983).

The rule "arises from concerns about the potential windfalls to at-fault defendants and, quite separately, about concerns over the prejudicial effect of informing a jury that the plaintiff had already received insurance payments for the loss." *Gabree v. Beauregard*, p. 2, Docket No. S0343-04 Fc (Franklin Superior Court, December 9, 2005) (Crawford, J.). The rule is intended to be punitive in nature. *Windsor School District v. State*, 2008 VT 27, ¶ 34. Its purpose is to "prevent the defendant wrongdoer from benefiting from the plaintiff's foresight in acquiring the insurance through any offsetting procedure." *Hall*, 143 Vt. at 141-142.

Even if the result is a windfall to a plaintiff, the collateral source rule prohibits a defendant from receiving an offset and benefitting from a plaintiff's prudence in purchasing insurance.[2]  In fact, the Vermont Supreme Court has held that "[i]f there must be a windfall certainly it is more just that the injured person shall profit therefrom, rather than the wrongdoer

---

[2] Pursuant to the law of subrogation, it is arguable whether any plaintiff would ever be unjustly enriched under the collateral source rule.

shall be relieved of his full responsibility for his wrongdoing." *Windsor School District v. State*, 2008 VT 27, ¶ 32. (internal citations omitted).  The Restatement (Second) of Torts is consistent with the Vermont Supreme Court on this issue:

> The injured party's net loss may have been reduced correspondingly, and to the extent that the defendant is required to pay the total amount there may be a double compensation for a part of the plaintiff's injury.  But it is the position of the law that a benefit that is directed to the injured party should not be shirted so as to become a windfall for the tortfeasor.

Restatement (Second) of Torts § 920A cmt.b (1979).

Vermont Supreme Court Justice, Hon. Marilyn S. Skoglund, also addressed this issue while presiding over a trial in the Chittenden Civil Division.  *See Pulette Beaudin v. Michele Defendant*, Docket No. S0803-07 CnC (Vermont Superior Court, Chittenden Civil Division, October 26, 2010) (Skoglund, J.) [copy attached hereto].  In that case, Justice Skoglund affirmed the longstanding application of the collateral source rule in Vermont:

> Application of this rule necessarily requires a balancing of ills.  If the plaintiff can recover insured costs, she can potentially receive a windfall (assuming the insurer has no subrogation clause). Alternatively, if the defendant is only required to pay the noninsured cost, she appreciates the windfall of not paying the full cost of making the plaintiff whole and essentially benefits from the plaintiff's preparation.  In weighing these challenges, the Supreme Court has recently ruled *firmly* in favor of plaintiffs.

Id. at page 1 (emphasis added).  Justice Skoglund, in *Beaudin*, even broadened the application of the collateral source rule to include government payments through Medicaid and not just sources procured by the plaintiff directly such as health insurance.  Id. at page 3.  Justice Skoglund's analysis of the collateral source rule in this trial court decision shows that the Vermont Supreme Court will not likely curb the application of the collateral source rule, and may even expand its application.

4

The law in Vermont supports that the Defendant in the present matter is not entitled to an offset or reduction in damages owed Plaintiff based on payments the Plaintiff received from his health insurance carrier toward his medical expenses.  Therefore, the definition of the "reasonable value" of Plaintiff's medical care should be the amount that Plaintiff's health care providers *charged* for Plaintiff's care, not the amount that Plaintiff's health care providers received in *payment* from Plaintiff's insurance carrier.

## II.     THE COLLATERAL SOURCE RULE ALLOWS PLAINTIFF TO RECOVER HIS PRETAX LOST WAGES

Pursuant to Vermont law, Plaintiff is entitled to pretax lost income damages, as lost income to be reimbursed to the Plaintiff in this matter is a non-taxable recovery due to a benefit the Federal Government has extended to all injured parties.  In *Coty v. Ramsey Assocs.*, 149 Vt. 451, 462 (1988) the Court held that a tax benefit realized on a tax return by a plaintiff is subject to the collateral source rule [see a copy of this decision attached].  The Vermont Supreme Court in *Coty* held that "[a]ny tax benefit received by plaintiffs is a matter solely between them and the taxing authority.  If we considered the significance of such tax benefits, then we would also have to consider the diminution of damages awards by taxation." Id. at 462-463 (citations omitted).

Additionally, Revenue Ruling 85-97 (I.R.S. 1985) held that the entire amount of lost wage proceeds recovered in a personal injury suit are "excludable from the individual's gross income." Id. (citing Rev. Rul. 61-1).  Revenue Ruling 61-1 is consistent with this holding:

> Section 104 (a) (2) of the Internal Revenue Code of 1954 provides that gross income does not include the amount of any damages received (whether by suit or agreement) on account of personal injuries or sickness, to the extent that such amounts are not attributable to deductions for medical expenses taken by the taxpayer in a prior year.
>
> Section 1.104-1 (c) of the Income Tax Regulations provides, in part, that the term "damages received (whether by suit or

5

agreement)" means an amount received, other than workmen's compensation, through prosecution of a legal suit or action based upon tort or tort-type of rights, or through a settlement agreement entered into in lieu of such prosecution.

Section 3231 (e) (1) of the Railroad Retirement Tax Act (chapter 22, subtitle C, Internal Revenue Code of 1954) provides, in part, that the term "compensation" includes remuneration paid for time lost as an employee.

Rev. Rul. 61-1 (I.R.S. 1961)

Based on these holdings and the Vermont's Supreme Court's application of the collateral source rule to tax benefits, Plaintiff's lost income should be valued at its pretax amount.

WHEREFORE, Plaintiff requests that this motion *in limine* be granted, and that counsel for both parties be instructed to limit their evidence and comments before the jury in accordance with the Court's ruling.

DATED at Burlington, Vermont this 14th day of January, 2011.

/s/ Chad V. Bonanni
John J. Bergeron, Esq.
Chad V. Bonanni, Esq.
Bergeron Paradis Fitzpatrick, LLP
Attorneys for Plaintiff
27 Main Street, P.O. Box 925
Burlington, VT 05402-0925
chad@essex.bpflegal.com
(802) 863-1191