





January 19, 2011

Jeffery S. Eaton, Clerk
U.S. District Court
P.O. Box 945
Burlington, VT
05402-0945

      RE:    Melo v. Allstate Insurance Co.
                Case No. 2:10-cv-104

Dear Jeffery:

Enclosed please find a copy of the Vermont Superior Court Case, *Gabree v. Beauregard*, Docket No. S0343-04 Fc (Franklin Superior Court, December 9, 2005) (Crawford, J.) that was cited in *Plaintiff's Motion In Limine RE: Medical Specials & Lost Wages*.

Also, the complete citation of *Windsor Sch. Dist. v. State* also cited in said motion is 183 Vt. 452, 2008 VT 27, 956 A.2d 528 (2008).

Thank you for your attention to this matter.

Very truly yours,

Chad V. Bonanni

Enc.


cc:    Richard Wadhams, Jr., Esq.

Attorneys and Advisors

34 Pearl Street ■ P.O. Box 174 ■ Essex Jct., Vermont 05453-0174 ■ Tel 802.879.6304 ■ Fax 802.879.6533 ■ www.bpflegal.com

STATE OF VERMONT
COUNTY OF FRANKLIN, SS.

RICKY J. GABREE

v.

FRANKLIN SUPERIOR COURT
DOCKET NO.: S 343-04 Fc

YVES A. BEAUREGARD

### DECISION ON MOTION IN LIMINE

The plaintiff in this motor vehicle case has filed a motion in limine seeking a ruling on the scope of damages which he can recover for medical expenses. Plaintiff seeks to recover the face amount of his medical bills – $27,335.59. The defendant argues that because the plaintiff received Medicaid benefits, any claim for medical bills is limited to the amounts the Medicaid program actually paid for his care – $8,606.

### FACTS

For purposes of this motion, the facts are not in dispute.

The plaintiff received injuries in a motor vehicle collision on December 7, 2003. At that time he and his family were covered by the Vermont Medicaid program. Depending on his income, he pays a monthly premium for this coverage of between $40 - $63.[1] The Medicaid program pays for health care on a fee schedule which is substantially lower than the face amount of the charges. The Medicaid discount is approximately 2/3. There is no "balance billing." Payment by the Medicaid program qualifies as full payment to the physician or hospital.

### ANALYSIS

Vermont law has always included the reasonable value of medical expenses in the damages awarded to the plaintiff in a tort case. This principle applies regardless of whether the plaintiff actually paid for the care. As early as 1873, the husband of a wife injured due to a road defect was awarded the value of his own nursing services provided to his wife. *Lindsey v. Town of Danville*, 46 Vt. 144, 150 (1873)("We think that the value of plaintiff's services in attending upon his wife, rendered necessary by the injury, comes within the scope of the declaration."

In *Northeastern Nash Auto Co. v. Bartlett*, 100 Vt. 246, 258 (1927), the Court held that payment by a third party was no defense to a claim for conversion of an automobile.

---

[1] The premium history sheet provided by the Office of Vermont Health Access shows that the plaintiff paid a $40 premium on 7/3/03 (prior to the accident) and then consistently from 3/4/04 to present except for two months.

1

> It appeared that an insurance company had paid plaintiff on account of the loss of the car all that plaintiff claimed the car was worth. Whether such company was liable as insurer for the car, or acted as a mere volunteer did not appear, except by inference. It is not of the slightest consequence who reimbursed plaintiff, or under what circumstances, if defendant was not connected therewith, and there was no evidence to warrant an inference that he was. The thief who takes my property cannot escape liability to me simply because some insurance company, or my friends, or neighbors, have compensated me for my loss. It is uniformly held in actions for injuries resulting from fire or accident that the fact that plaintiff has received compensation by way of insurance cannot be shown in reduction of damages.

In personal injury cases, the Vermont Supreme Court has consistently held that medical expenses and lost wages may be recovered in personal injury cases even though the expense was covered by charity or provided without cost to the plaintiff. See *D'Archangelo v. Loyer*, 125 Vt. 325 (1965)(receipt of sick leave pay does not bar claim for lost wages); *Kerr v. Rollins*, 128 Vt. 507 (1970)(travel expenses paid by third party gratuitously may be recovered as damages).

There can be little doubt that cases such as *D'Archangelo* and *Kerr* do not permit the defendant to invoke payment by a third-party such as a health insurer to prevent a claim for medical expenses. If expenses paid by charity are recoverable, then, *a fortiori*, a claim covered by a government health program to which plaintiff contributes a monthly premium is also subject to the collateral source rule.

The collateral source rule arises from concerns about potential windfalls to at-fault defendants and, quite separately, about concerns over the prejudicial effect of informing a jury that the plaintiff had already received insurance payments for the loss. The cases defining the rule recognize the likelihood of some degree of double recovery. The rule accepts this result because of the greater potential for harm which could result from disclosure. In addition, in virtually all cases, including cases involving the Medicaid program, the potential for double recovery is reduced by the insurer's subrogation rights.

The Vermont collateral source rule is consistent with the Restatement (Second of Torts, § 920A(2) (1979) which provides

> Payments made to or benefits conferred on the injured party from other sources [than the tortfeasor or someone subject to the same tort liability] are not credited against the tortfeasor's liability, although they cover all or a part of the harm for which the tortfeasor is liable.

Comment c to section 920A addresses the effect of governmental benefits:

> The rule that collateral benefits are not subtracted from the plaintiff's recovery

2

> applies to the following types of benefits: ... (4) Social legislation benefits. Social security benefits, welfare payments, pensions under special retirement acts, all are subject to the collateral source rule.

The plaintiff's status as a Medicaid benefit alone does not create an exception to the collateral source rule.

There are decisions in both directions on this issue in other states. Compare *Bynum v. Magno*, 101 P.3d 1139 (Hi. 2004) with *Moorhead v. Crozer Chester Medical Center*, 765 A.2d 786 (Pa. 2001). The arguments against application of the collateral source rule do not apply in this case. Several decisions turn on a perceived lack of consideration because the plaintiff did not pay for the coverage. In this case, the plaintiff paid a premium during many of the months covered by his claim. In addition, Vermont has clearly stated that services provided without charge to the plaintiff remain subject to the collateral source rule.

Other cases turn on the definition of value in Restatement (Second) of Torts, § 911 which defines value as exchange (market) value for purposes of tort damages. Comment h states:

> When the plaintiff seeks to recover for expenditures made or liability incurred to third persons for services rendered, normally the amount recover is the reasonable value of the services rather than the amount paid or charged. If, however, the injured person paid less than the exchange rate, he can recover no more than the amount paid, except when the low rate was intended as a gift to him.

This comment is broadly drafted to apply to all tort claims. On its face, it does not apply to payments by third-party insurers which are subject of the collateral source rule. It applies only to expenditures by the plaintiff himself. To extend the principle proposed by comment h to payments by health insurers would greatly reduce the application of the collateral source rule. Since section 920A is directed to the collateral source issue, the Court will follow its explicit direction.

In summary, the rule in Vermont is long-standing that medical expenses are measured by the cost of comparable services from other providers within the community. The ability of a government agency to obtain health services for low income people on a discounted basis does not establish the market value for these services. The plaintiff's participation in the Medicaid program does not place him outside the operation of the collateral source rule.

For these reasons, the Court grants the plaintiff's motion in limine and will not permit the defendant to introduce evidence of the actual levels of reimbursement paid by the Medicaid program to the doctors and other health care providers who provided care to the plaintiff.

Dated: 12-9-05

Geoffrey Crawford,
Superior Court Judge

3