UNITED STATES DISTRICT COURT
FOR THE
DISTRICT OF VERMONT

| | |
|---|---|
| Daniel Melo, | ) |
|     Plaintiff | ) |
| v. | )    Case No.: 2:10-CV-104 |
| | ) |
| Allstate Insurance Company, | ) |
|     Defendant | ) |

**DEFENDANT'S OPPOSITION TO PLAINTIFF'S MOTION IN LIMINE
RE: MEDICAL SPECIALS & LOST WAGES**

Defendant Allstate Insurance Company opposes *Plaintiff's Motion in Limine Re: Medical Specials & Lost Wages* ("*Plaintiff's Motion*" herein) (Document 37), filed January 14, 2011, as follows:

I. **Plaintiff's Argument Regarding Medical Bills Should Be Rejected By This Court.**

    A. **This Court Should Reject Plaintiff's Argument Regarding Medical Bills, Exclude Plaintiff's Proffered Evidence Of The Amounts Originally Billed By Plaintiff's Medical Providers, And Rule That The Only Admissible Evidence Regarding The "Reasonable Value" Of Plaintiff's Medical Bills Is The Amounts Actually Accepted By Plaintiff's Medical Providers As Payment In Full.**

The total amount billed by Plaintiff's medical providers is $149,816.17. See *Plaintiff's Motion* at 2. The amount actually accepted as payment in full by Plaintiff's medical providers (including pending liens), however, is much less. For example, the attached invoice from FAHC Physicians, dated January 8, 2010, shows the amounts originally billed, the amounts paid by Plaintiff's health insurer (MVP), the amounts "adjusted" and written off by FAHC, and the remaining amounts to be paid by Plaintiff. See Invoice, attached as Exhibit A.[1] This invoice

---

[1] Defendant's discussion of Exhibit A is limited to pages 1 - 3 of the invoice; page 4 of the invoice is not discussed because page 4 does not indicate the amounts paid by MVP, amounts adjusted and/or written off by FAHC, and/or the amounts owed by Plaintiff.

reflects that, although the amount originally billed (between 8/5/09 and 12/4/09) was $3,784.00, FAHC actually accepted as payment in full only $1,203.17 (of which, $943.26 was paid by MVP and $259.91 is to be paid by Plaintiff). The remainder of the original bill ($2,580.29) was "adjusted" and written off by FAHC. <u>In other words, FAHC accepted as payment in full an amount that was less than one-third of the original bill. Plaintiff should not be permitted to recover these "phantom damages."</u>

For the reasons set forth herein, Defendant respectfully moves this Court to deny *Plaintiff's Motion*, preclude Plaintiff from introducing evidence of the amounts the medical providers originally billed for Plaintiff's medical services, and limit Plaintiff's claimed value of medical services to the amount actually accepted by the medical providers as full payment for services rendered. This will not prejudice Plaintiff because the jury will not be informed that the payments were made by Plaintiff's health insurer. Moreover, this will not violate the collateral source rule because there will not be a setoff for the amounts paid by Plaintiff's health insurer. <u>As explained below, the issue is what evidence should be admitted from which the jury may make a factual determination of the "reasonable value" of the medical services Plaintiff received; the evidence of the amounts accepted by the medical providers as payment in full are the best evidence of the "reasonable value" of those medical services.</u>

The purpose of compensatory damages is to "make plaintiff whole" for any injuries sustained in the accident that is the subject matter of this lawsuit. As the Vermont Supreme Court has stated: "In tort, compensation is provided, as nearly as possible, to restore a person damaged to the position he would have been in had the wrong not been committed." <u>My Sister's Place v. City of Burlington</u>, 139 Vt. 602, 612 (1981). <u>See also Kramer v. Chabot</u>, 152 Vt. 53, 55-56 (1989). Plaintiff should not, however, receive a windfall which would put him in a financial position better than he would have been had the accident not occurred.

PIERSON WADHAMS QUINN
YATES & COFFRIN, LLP
253 SOUTH UNION STREET
BURLINGTON, VERMONT
05401

2

Vermont's measure of damages for medical expenses is "the reasonable value of services rendered." Smedberg v. Detlef's Custodial Svc., 2007 VT 99, ¶ 37. Making Plaintiff whole must not include the recovery of illusory "medical expenses" that he did not incur and for which he is not liable. As explained herein, the amounts accepted by Plaintiff's medical providers as payment in full reflect the reasonable value for the medical services that Plaintiff received.

In McGowan v. Chase, Docket No. S0739-06 Cnc (May 11, 2009) (copy attached as Exhibit B), the Vermont Superior Court, Chittenden Unit, ruled that "the amount(s) actually paid to, and received by the medical provider as full compensation and reimbursement" is "the applicable, and more appropriate standard" for the measure of damages. The Court explained as follows:

> **If "reasonableness" of the charge(s) is the touchstone of recoverability**, *cf.*, e.g., *Ellsworth v. Schelbrock*, 235 Wisc.2d 678, 688, 611 N.W.2d 764, 769 (2000), **what is more convincing as to what a medical provider thinks his/her/its services are really worth, than the amount he/she/it agrees to accept as payment in full?** The contrary rule will most likely open the door to extended, and unnecessary side disputes on whether the billed charges are in fact "reasonable."
>
> And, it seems the Illinois Supreme Court [which ruled in *Arthur v. Catour*, 216 Ill. 72, 833 N.E.2d 847 (2005) that a plaintiff should recover the full amount of the provider's original bill] was simply wrong in its characterization of the economic reality of these transactions. [The *Arthur* Court wrote,] "To restate the obvious: plaintiff did not receive a discount from the provider. Rather, plaintiff received the benefit of her bargain with her insurance company – full coverage for incurred medical expenses." *Arthur*, 833 N.E.2d at 853. It is certainly not obvious, at least to the undersigned; the write-off does come directly from the provider, as a result of the provider's participation contract with the health insurance carrier, and not because of the insured's own policy coverage. Thus, as Defendant contends, the "collateral source" rule is not even literally implicated.

Id. at 2-3 (emphasis added). See also Cote-Wurzler, et al. v. Toys R Us Delaware, Inc., Docket No. S1204-08 Cnc (May 11, 2009) (Pearson, J.) (copy attached as Exhibit C) ("Plaintiff will be allowed to put in evidence of, and potentially recover the actual amount(s) paid for any/all medical treatment. This is not a "collateral source" issue, otherwise Plaintiff would receive a "windfall" based on some artificial construct").

Similarly, in Bora v. Chittenden County Transportation Authority, et al., Docket No. S0243-04 Cnc (April 14, 2006) (Joseph, J.) (copy attached as Exhibit D), the Vermont Superior Court, Chittenden Unit, ruled that, the plaintiff may not recover more than the "amounts actually paid on behalf of the plaintiff and accepted as full payment by the health care providers." Id. at 2. This Court reasoned as follows:

> Plaintiff is entitled to damages that reflect the reasonable value of the health care services she received, regardless of whether she or an independent third party paid for them or whether they were provided for free or for less than reasonable value. As the comment to the Restatement (Second) of Torts § 920A notes "the fact that the doctor did not charge for his services or the plaintiff was treated in a veterans hospital does not prevent [plaintiff's] recovery for the reasonable value of the services." The key inquiry is how to determine the "reasonable value" of the health care services provided to the plaintiff and whether that value is better determined by what providers may have billed for such services or by what they accepted in full payment for such services.
>
> * * *
>
> This court notes that there are now, routinely, often enormous disparities in the amounts billed for health care services and the amounts actually paid by health care plans, insurance carriers, government programs, patients and other payors and ultimately accepted by providers as full payment for such services. **In this environment, it is difficult to accept the principle that the billed amount represents the "reasonable value" of the service, when the billed amount is rarely paid in full for many services.**

Id. at 3-4 (emphasis added). Thus, the Court ordered that the defendant's motion was granted

YATES & COFFRIN, LLP
253 SOUTH UNION STREET
BURLINGTON, VERMONT
05401

4

and that the plaintiff was permitted to introduce evidence only as to the amounts actually paid (and accepted as payment in full) to her health care providers.

Several trial courts in the neighboring states of Maine and New Hampshire also have ruled that a plaintiff's evidence of his medical bills is limited to those amounts that were accepted as "payment in full" by the health service provider. See Allarie v. Donnelly, 02-162-P-H (U.S.Dist.Ct.Me. 2003) (granting the defendant's motion in limine to limit the plaintiff's medical damages to the amounts that were actually paid by Medicare); Labrie v. Griffin, CV-01-238 (Me.Sup.Ct. 2002) (Androscoggin County) (granting the defendant's motion in limine to limit the plaintiff's medical damages to the amounts the health service provider accepted as payment in full); Eastman v. EMMC, CV-98-210 (Penobscot) (ruling that the plaintiff's recovery of medical expenses was limited to the amounts the medical service providers accepted as payment in full); Tonya Cook v. Linda M. Morin-Binder, Docket No. 05-C-238; Maida E. Demeule v. Linda M. Morin-Binder, Docket No. 05-C-319 (Strafford County Superior Court) (Jan. 12, 2007) (Houran, J.) (ruling that the plaintiff's evidence of the reasonable value of her medical expenses was limited to the amounts the health service providers accepted as payment in full); Donna Rollins v. Hitesh Rawel & Shivum, Docket No. 06-C-095 (Dec. 13, 2007) (Groff, J.) (granting the defendant's motion in limine and ruling that the plaintiff's evidence of medical expenses was limited to the amounts accepted as payment in full by the health service providers).

The same conclusion has been reached by a number of other states. See e.g. Cooperative Leasing, Inc. v. Johnson, 872 So.2d 957, 958 (Fla.App. 2 Dist. 2004) ("The primary basis for an award of damages is *compensation*. We conclude [] that Johnson was not entitled to recover for medical expenses beyond those paid by Medicare because she never had any liability for those expenses and would have been made whole by an award limited to the amount that Medicare

PIERSON WADHAMS QUINN YATES & COFFRIN, LLP
253 SOUTH UNION STREET
BURLINGTON, VERMONT
05401

paid to her medical providers") (emphasis in original) (citation omitted); Bozeman v. State, 879 So.2d 692, 699 (La. 2004) (reasoning that the compensatory purpose of tort damages would not be served by allowing the plaintiff to recover a non-existent or illusory expense that was never paid by any collateral source); Bates v. Hogg, 921 P.2d 249, 252-53 (Kan. App. Ct. 1996) (ruling that the amount accepted by Medicaid constitutes the "reasonable value" of medical services); Mitchell v. Hayes, 72 F.Supp. 635, 637 (W.D. Va. 1999) (ruling that discounting is a reality of modern medical economics and it does no violence to the collateral source doctrine to bring to the tort compensation system the same intended savings). These courts have found that the collateral source rule has no applicability where the amounts actually paid by Medicaid are offered as evidence of the "reasonable value" of health care services. See Moorhead, 765 A.2d at 789-91; Hanif, 200 Cal. App.3d at 644; Coop. Leasing, Inc., 872 So.2d at 960; Bates, 921 P.2d at 253.

Plaintiff argues that he should be allowed to recover the full amount of the medical bills because it will assure that the Defendant will be punished for his alleged negligence. See *Plaintiff's Objection* at 5.[2] Regarding punitive damages, the Vermont Supreme Court recently instructed that

> the culpability necessary for an award of punitive damages based on reckless or wanton misconduct requires evidence that the defendant acted, or failed to act, in conscious and deliberate disregard of a known, substantial and intolerable risk of harm to the plaintiff, with the knowledge that the acts or omissions were substantially certain to result in the threatened harm.

Fly Fish Vermont, Inc. v. Chapin Hill Estates, Inc., 2010 VT 33, ¶ 25.

---

[2] In support of his argument, Plaintiff cites to *Windsor School District v. State*, 2008 VT 27, ¶ 32; however, that case does not pertain to medical expenses.

PIERSON WADHAMS QUINN YATES & COFFRIN, LLP
253 SOUTH UNION STREET
BURLINGTON, VERMONT
05401

Plaintiff is not seeking punitive damages in this case, nor would the evidence in this case support a claim for punitive damages. To allow Plaintiff to recover phantom medical expenses under a theory that it is necessary to punish the Defendant would improperly convert Vermont's compensatory damages law into a punitive damages provision absent the burden of proof required by Fly Fish Vermont.

For this reason, Plaintiff's reliance upon Beaudin v. Kupersmith, Docket No. S0803-07 Cnc (Vermont Superior Court, Chittenden Civil Division, October 26, 2010) (Skoglund, J.), is misplaced. Justice Skoglund's decision does not in any way indicate the outcome that the other four Supreme Court Justices would reach on this issue if it were presented to the Supreme Court. Moreover, with all due respect, Justice Skoglund's decision relied upon Windsor School District v. State, 2008 VT 27, ¶ 32; however, that case did not pertain to medical expenses. Furthermore, Justice Skoglund's decision took the view that compensatory damages are intended to punish the defendant. As explained above, this approach conflicts with Vermont law (which clearly provides that compensatory damages are intended to "make the plaintiff whole" and put him in the same financial position that he would have been in, had the accident not occurred) and directly conflicts with the heightened burden of proof that the Supreme Court imposed upon punitive damages cases in Fly Fish, *supra*.

In sum, Defendant moves this Court to deny *Plaintiff's Motion* and order as follows: (1) Plaintiff may only introduce evidence of medical expenses in the amounts that have been accepted as payment in full by Plaintiff's medical providers; and, (2) Plaintiff may not introduce evidence of the amounts originally charged by the medical providers, as there is no dispute that neither Plaintiff (nor his medical insurer) was liable - and never will be liable - for the amounts originally billed.

> B. **In The Alternative, This Court Should Rule That It Will Admit Evidence Of Both The Amounts Originally Billed And The Amounts Actually Accepted As Payment In Full, So That The Jury May Make A Factual Determination Of The "Reasonable Value" Of Plaintiff's Medical Bills.**

In the alternative, if this Court rules that Plaintiff is allowed to submit evidence of the "face amount" of his medical bills to the jury, Defendant moves this Court to further rule that, in the interests of fairness and justice, the jury also is permitted to review (in making its fact determination of the "reasonable value" of Plaintiff's medical expenses) evidence of the lesser amounts actually accepted by Plaintiff's medical providers as payment in full. See e.g. Standby v. Walker, 906 N.E.2d 852, 857 (Ind. 2009) (quoting Robinson v. Bates, 857 N.E.2d 1195, 1200-01 (Ohio 2006) ("[t]he jury may decide that the reasonable value of medical care is the amount originally billed, the amount the medical provider accepted as payment, or some amount in between . . . both the original bill and the amount accepted are evidence relevant to the reasonable value of medical expenses"). See also Bora, *supra* at 4 ("In this environment, it is difficult to accept the principle that the billed amount represents the "reasonable value" of the service, when the billed amount is rarely paid in full for many services").

II. **Plaintiff's Argument Regarding Lost Income[3] Should Be Rejected By This Court; The U.S. Supreme Court Has Ruled That It Is Proper For A Jury To Hear Evidence Of Plaintiff's Post-Tax Lost Income And For A Jury To Be Instructed That Any Amount Awarded To Plaintiff Will Not Be Taxable Income.**

Plaintiff urges this Court to rule that Plaintiff is entitled to recover pre-tax lost income. Plaintiff is correct that any award for medical bills and lost income is not taxable income; however, Plaintiff is incorrect to presume that the fact that the award is not taxable requires that

---

[3] For simplicity's sake, Defendant uses the phrase "lost income" to refer to Plaintiff's claims for lost income and lost earning capacity.

he also be awarded lost income at the pre-tax amount. In fact, Plaintiff's argument seeks to "double dip" – recovering an award of lost income at pre-tax amounts, when the tax laws provide that the lost income award will not be taxed. As discussed below, Plaintiff's argument is inconsistent with a ruling by the U.S. Supreme Court and is inconsistent with the Vermont Supreme Court's directive that "tort[] compensation is provided, as nearly as possible, to restore a person damaged to the position he would have been in had the wrong not been committed." My Sister's Place, 139 Vt. at 612.

The citations offered by Plaintiff do not support his position. Although Plaintiff cites Coty v. Ramsey Assocs., 149 Vt. 451 (1988) for his argument, Coty is not on point. In Coty, the issue was whether the plaintiff could recover the cost of air conditioners purchased to minimize the odor of the neighboring farm, when the plaintiffs already had included depreciation of the air conditioners on their tax returns. The Court ruled that any tax benefit to the plaintiffs was "between them and the taxing authority." Id. at 463. Coty does not address the issue raised by Plaintiff, namely, whether he can present to the jury only his pre-tax lost income calculations.

The only other citation offered by Plaintiff is Revenue Ruling 85-97 (I.R.S. 1985), which provides that jury awards for lost income are "excludable from the individual's gross income." Id. (citing Revenue Ruling 61-1 (I.R.S. 1961)). Again, this does not in any way indicate that Plaintiff is entitled to present to the jury a pre-tax lost income calculation.

Plaintiff's argument conflicts with the United States Supreme Court's position – and a growing number of states – on this issue. In Norfolk & Western Railway Co. v. Liepelt, 444 U.S. 490, 100 S.Ct. 755, 62 L. Ed. 2d 689 (1980), the United States Supreme Court ruled that a plaintiff in a wrongful death action must present to the jury the after-tax lost income:

> **It is his after-tax income, rather than his gross income before taxes, that provides the only realistic measure of his ability to support his family. It follows inexorably that the wage earner's income tax is a relevant factor in calculating the monetary loss suffered by his dependents when he dies.**

Id. at 493-94, 100 S. Ct. at 757, 62 L. Ed. 2d at 693-94 (emphasis added).

The Supreme Court continued, recognizing that the tax code provides that personal injury awards are not taxable, and reiterating that the jury also should be instructed that the plaintiff's award will not be taxable income:

> We take notice of the 'tax consciousness' of the American public. Yet we also recognize . . . that few members of the general public are aware of the special statutory exception for personal injury awards contained in the Internal Revenue Code.
>
> There is always the danger that today's tax-conscious juries may assume (mistakenly, of course) that the judgment will be taxable and therefore make their verdict big enough so that plaintiff would get what they think he deserves after the imaginary tax is taken out of it.

Id. at 497, 100 S. Ct. at 759, 62 L. Ed. 2d at 695-96. See also Stowell v. Simpson, 143 Vt. 625, 627-28, 470 A.2d 1176, 1177-78 (1983) (citing Norfolk & Western Railway v. Liepelt)).

Other courts have followed the same approach, requiring that lost income claims be presented in the "net" amount, that is, the after-tax lost income. See e.g. Floyd v. Fruit Industries, Inc., 136 A.2d 918, 925 (Conn. 1957) ("When destruction of earning capacity, that is, the capacity to carry on the particular activity of earning money, is to be compensated for, the inquiry in the first instance is as to probable net earnings"); Runyon v. District of Columbia, 463 F.2d 1319 (D.C. Cir. 1972) ("it is proper for the estate of the deceased to recover an amount based on probable net future earnings"); Turcotte v. Ford Motor Company, 494 F.2d 173 (1st Cir. 1974) (ruling that the plaintiff's economics expert erroneously failed to "reduc[e] [the decedent's] projected earnings for federal and state income taxes") (citing Romano v. Duke, 304

PIERSON WADHAMS QUINN
YATES & COFFRIN, LLP
253 SOUTH UNION STREET
BURLINGTON, VERMONT
05401

10

A.2d 47, 50 (R.I. 1973)); <u>Tenore v. NuCar Carriers, Inc.</u>, 341 A.2d 613, 623 (N.J. 1975) ("plaintiff's losses in a wrongful death action are limited to the value of the deceased's net income") (citing 2 Harper & James, the Law of Torts § 25.12 at 1326 (1956)) ("The argument for computing damages on estimated income after taxes is a clear one: this will measure the actual loss. If plaintiff gets, in tax free damages, an amount on which he would have had to pay taxes if he had gotten it as wages, the plaintiff is getting more than he lost"). This approach also is taken in personal injuries cases that do not involve a wrongful death claim. <u>See Newmann v. United States</u>, 938 F.2d (11th Cir. 1991) ("to avoid an award of punitive damages, income taxes usually must be deducted from future earnings awarded under the [Federal Tort Claims Act]"); <u>Ruff v. Weintraub</u>, 519 A.2d 1384, 1386 (N.J. 1987) ("**the proper measure of damages for lost income in personal-injury cases is net income after taxes**") (emphasis added); <u>Monaghan v. Uiterwyk Lines, LTD.</u>, 607 F.Supp. 1020 (U.S.E.D.Pa. 1985) (reducing the injured plaintiff's lost wages and lost earning capacity claims to their after-tax amounts).

The approach taken by the above case law should be followed by this Court, as it is consistent with the Vermont Supreme Court's directive that compensatory damages in a tort claim are intended to put the plaintiff in the financial position he would have been in, had the tort not occurred. <u>See My Sister's Place</u>, 139 Vt. at 612.

Thus, this Court should deny *Plaintiff's Motion* to exclude evidence of his net income and rule that (1) Plaintiff may only present evidence of his after-tax lost income; and (2) the jury will be instructed that Plaintiff's damages award will not be taxable income.

### Conclusion

Wherefore, Defendant respectfully requests that this Court deny *Plaintiff's Motion* and rule as follows:

PIERSON WADHAMS QUINN
YATES & COFFRIN, LLP
253 SOUTH UNION STREET
BURLINGTON, VERMONT
05401

(1) Plaintiff may only introduce evidence of medical expenses in the amounts that have been accepted as payment in full by Plaintiff's medical providers and Plaintiff may not introduce evidence of the amounts originally charged by the medical providers, as there is no dispute that neither Plaintiff (nor his medical insurer) was liable - and never will be liable - for the amounts originally billed, or, in the alternative,

In the interests of fairness and justice, the jury also is permitted to review (in making its fact determination of the "reasonable value" of Plaintiff's medical expenses) evidence of the amounts actually accepted by Plaintiff's medical providers as payment in full; and

(2) Plaintiff may only present evidence of his after-tax lost income and/or lost earning capacity, and the jury will be instructed that Plaintiff's damages award will not be taxable income

Dated at Burlington, Vermont, this 27th day of January, 2011.

PIERSON WADHAMS QUINN YATES & COFFRIN, LLP
ATTORNEYS FOR DEFENDANT
ALLSTATE INSURANCE CO.


By: /s/Richard H. Wadhams, Jr.
Richard H. Wadhams, Jr., Esq.
Pierson Wadhams Quinn Yates & Coffrin, LLP
253 South Union Street
Burlington, VT 05401
(802) 863-2888
wadhams@pwqy.net


cc: John J. Bergeron, Esq.