UNITED STATES DISTRICT COURT
FOR THE
DISTRICT OF VERMONT

| | |
|---|---|
| DANIEL MELO, ) | |
| ) | |
| Plaintiff, ) | |
| v. ) | Case No.: 2:10-CV-104 |
| ) | |
| ALLSTATE INSURANCE COMPANY, ) | |
| ) | |
| Defendant. ) | |

PLAINTIFF'S MEMORANDUM OF LAW IN REPLY
TO DEFENDANT'S "OPPOSITION TO PLAINTIFF'S MOTION
IN LIMINE RE: MEDICAL SPECIALS AND LOST WAGES"

I. **There is a long history of case law from the Vermont Supreme Court and Trial Courts that support Plaintiff's Motion In Limine Regarding Medical Bills.**

   A. **Plaintiff is not seeking "phantom damages".**

Defendant Allstate, in its *Opposition to Plaintiff's Motion In Limine re: Medical Specials and Lost Wages* ("Opposition"), is asking this Court to disregard the collateral source doctrine and reject over a century of Vermont jurisprudence. Allstate asserts that it should receive the benefit of a private agreement between Plaintiff's health insurer and his medical providers. Contrary to Allstate's assertion, the reasonable value of the medical services rendered to the Plaintiff are accurately reflected by the amounts charged by his medical providers. The Defendant's request that this Court ignore the collateral-source doctrine should be rejected.



Defendant erroneously argues that *Smedberg v. Detlef* 2007 VT 99, ¶ 37 (2007) holds that "making Plaintiff whole must not include the recovery of illusory 'medical expenses' he did not incur and for which he is not liable." *See* Defendant's Opposition at 3. Contrary to Defendant's contention, the actual holding in *Smedberg*, is that Vermont's measure of damages for medical expenses is "the reasonable value of services rendered." *Smedberg*, at ¶ 37. Furthermore, the

Vermont Supreme Court has held that "[f]or more than a century, Vermont courts have applied the collateral-source doctrine to deny to a Defendant a set-off for payment the Plaintiff receives from a third, or collateral source." *Hall v. Miller*, 143 Vt. 135, 141 (1983) (citing *E.G. Harding v. Town of Townsend*, 43 Vt. 536 (1870)).

The Court noted in *Hall* that "opponents [of the collateral-source] doctrine point out that the plaintiff unfairly receives a double recovery". *Hall v. Miller*, 143 Vt. at 142. The Court stressed, however, that "to hold otherwise would inject into a liability trial litigation regarding the recovery prospects from this third source -- raising issues clearly tangential to the original cause of action." Id. at 142. The Court in *Hall* relied on " the oft-quoted" *Northeastern Nash Automobile Company v. Bartlett*, 100 Vt. 246, 258 (1927):

> <u>It is not of the slightest consequence who reimbursed plaintiff, or under what circumstances</u>, if defendant was not connected therewith, and there was no evidence to warrant an inference that he was. The thief who takes my property cannot escape liability to me simply because some insurance company, or my friends, or neighbors, have compensated me for my loss. It is uniformly held in actions for injuries resulting from fire or accident that the fact that plaintiff has received compensation by way of insurance cannot be shown in reduction of damages.

*Hall*, 143 Vt. at 142.

The Court's holding in *Hall* is pertinent to the case at hand. The defendant in that case argued that the collateral-source rule should not apply because plaintiff's recovery was through an indemnification program run by the federal government (Medicaid), "and was completely fortuitous and in no way the result of plaintiff's foresight or expense." Id. at 143. The Vermont Supreme Court clearly rejected this argument stating that "the better rule is that the collateral-source rule should apply to actions sounding in contract, as well as in tort." Id. As between the



two parties, "it is better that the injured plaintiff recover twice than that the breaching defendant escape liability all together." Id.

In this case MVP, a private insurer, is the third party source of payment. Plaintiff paid premiums for this health insurance coverage, and MVP paid the bills based on agreements MVP made with the health service providers. It is common practice for insurance carriers as well as Medicaid and Medicare to contract with medical providers for reduced rates. This typically results in some portion of the bill being "written off". Introducing insurance payments as "evidence" or "proof" of the value of health care services, would amount to Defendant Allstate benefitting from Plaintiff's foresight in purchasing health insurance coverage, at Plaintiff's expense. This is precisely what the collateral source rule is intended to prevent. "In Vermont, the [collateral-source] rule has never been limited, expressly or impliedly, to situations where Plaintiff has paid for the protection of insurance." *Hall*, 143 Vt. at 144 (citing *Kerr v. Rollins*, 128 Vt. 507, 512 (1970) and *Northeastern Nash Automobile Company*, 100 Vt. at 257-58).

**B.     The number of Vermont trial court decisions which are supportive of Plaintiff's Motion in Limine, far outweigh the decisions of Judges Pearson and Joseph, which Defendant cites in his memo of law.[1]**

---



[1] Judge Joseph in the *Bora v CCTA* decision submitted by Defendant Allstate with its Opposition, relied in part on the California Court of Appeals decision in *Hanif v Housing Authority*, 200 Cal. App. 3d 635, 246 Cal. Rptr. 192, (Cal. App. 3d Dist. 1988). The *Hanif* rule has recently been distinguished by the California Court of Appeals. *See Howell v. Hamilton Meats & Provisions, Inc.*, 179 Cal. App. 4th 686, 690 (Cal. App. 4th Dist. 2009) (superseded by the California Supreme Court's grant of review) ("Hold[ing] that in a personal injury case in which the plaintiff has private health care insurance, the negotiated rate differential is a benefit within the meaning of the collateral source rule, and thus the plaintiff may recover the amount of that differential as part of her recovery of economic damages for the past medical expenses she incurred for care and treatment of her injuries."); *See also Yanez v. SOMA Environmental Engineering, Inc.*, 185 Cal. App. 4th 1313, 111 Cal. Rptr. 3d 257 (Cal. Ct. App. 2010) (superseded by the California Supreme Court's grant of review); *King v. Willmett*, 187 Cal. App. 4th 313, 113 Cal. Rptr. 3d 742 (Cal. Ct. App. 2010) (superseded by the California Supreme Court's grant of review). The three above referenced decisions by the California Court of Appeals "have been superseded by the California Supreme Court's grant of review and may not be cited as, and are not, authority pursuant to California Rules of Court rule 8.1115(a)." *Quintero v. United States*, 2010 U.S. Dist. LEXIS 128874 (E.D. Cal. Dec. 6, 2010).

The following trial court decisions[2] are a sampling of those upholding the application of the collateral source rule with respect to medical benefits paid on behalf of an injured party:

1) **Hon. Howard E. Van Benthuysen.** In the Franklin County Superior Court case of *Benoit v. Brandon L. Williams*, Docket No. S469-01 Fc, the defendant asserted the same argument as Defendant here, because plaintiff's bills were paid by Medicare. The defendant argued that plaintiff should not be allowed to recover the "face value of his medical bills but rather the amount actually paid by Medicare." This argument was rejected by Judge Van Benthuysen by Entry Order filed on September 5, 2003.

2) **Hon. Walter M. Morris, Jr.** In the Windsor Superior Court case of *Buker v. King*, Docket No. 523-11-05 WrCv, Judge Walter M. Morris, Jr., held "[i]ntroduction of evidence of other insurance or benefits serving to compensate a plaintiff other than attributed directly to the defendant has historically been barred as the obvious means to implement the collateral-source rule. The reach of the rule is obviated, or circumvented through the introduction of such evidence [amount paid by third party], even though it may have arguable probative value." Judge Morris granted plaintiff's motion in limine, excluding evidence of Medicaid payments for medical services (*See* decision filed on February 23, 2008, attached at **Exhibit B**).

3) **Hon. Alden T. Bryan.** In the Chittenden Superior Court case of *Gaston v. Nickerson*, Docket No. S1349-01 CnC, Judge Bryan held "if the write-offs here are to be considered a collateral-source, it is a source provided under the Workers' Compensation laws by the employer. While it is not a source of payment obtained by or paid for by the employee, it is



---

[2] The cases cited herein are in addition to the two Vermont Superior Court cases cited in Plaintiff's Motion in Limine: Justice Skoglund's decision in *Pulette Beaudin v. Michele Defendant*, Docket No. S0803-07 CnC (Vermont Superior Court, Chittenden Civil Division, October 26, 2010) (Skoglund, J.) and Judge Crawford's decision in *Gabree v. Beauregard*, p. 2, Docket No. S0343-04 Fc (Franklin Superior Court, December 9, 2005) (Crawford, J.).

not unlike employer provided general health insurance, a benefit belonging to the employee in connection with his employment." Judge Bryan excluded evidence of the collateral-source payments. (*See* a copy of the decision filed December 4, 2003 attached hereto at **Exhibit C**).

    4)    **Hon. Brian J. Grearson.**  In the Lamoille County Superior Court case of *Hoadley v. Bridwell*, Docket No. 184-8-06 Lecv, Judge Grearson held "collateral-source benefits are inadmissible in mitigation of the Defendant's liability for damages." (*See* decision filed June 19, 2008, attached at **Exhibit D**).

    5)    **Hon. Helen M. Toor.**  In the Addison County Superior Court case of *Madrid v. Paquette*, Docket No. 194-7-07 Ancv, Judge Toor held "Paquette has offered no reasonable grounds on which the Court should distinguish between Medicaid benefits and any other source of payment for medical bills. She merely points out that some other jurisdictions have done so. It is clear that under Vermont law Medicaid benefits are to be treated the same as insurance, gifts, or charitable donations to an injured plaintiff. The collateral-source rule bars any reduction in damages as a result of Medicaid payments." (*See* decision filed on July 28, 2008, attached at **Exhibit E**).

    6)    **Hon. David T. Suntag.**  In the Windham Superior Court case of *Rosa v. Dartmouth-Hitchcock Medical Center*, Docket No. 93-2-06 Wmcv, Judge Suntag held in excluding evidence of medical payments and write-offs by the provider, that "[t]hose absorbed bills resulted from the hospital's reimbursement agreement with Medicare/Medicaid, and Plaintiff is a beneficiary of that program." (*See* decision filed on November 26, 2008, at **Exhibit F**).

    7)    **Hon. Cortland Corsones.**  In the Addison County Superior Court case of *O'Bryan v. Hannaford Bros. Inc.*, Docket No. 10-1-07 Ancv, Judge Corsones held in denying a

5

request to put in evidence the reduced amounts paid on behalf of plaintiff, that "given the Vermont Supreme Court's recent, and strong, endorsement of the collateral-source rule in *Windsor School District v. State*, it is unlikely the Court would abandon the collateral-source rule under the facts of our case." (citing *Northeastern Nash Automobile Company v. Bartlett*, 100 Vt. 246, 258 (1927). (*See* decision filed on December 30, 2008, as **Exhibit G**).

Finally, in addition to the above decisions by various Vermont Superior Court Judges, the Plaintiff also directs the Court's attention to a pre-trial decision from the United States District Court for the District of New Hampshire, in the matter of *Bartlett v. Mutual Pharmaceutical, Inc.*, Civil No. 08-cv-358-JL. In that case, the Hon. Joseph N. Laplante ruled that the amounts actually billed rather than the amounts paid would be included in evidence reasoning that "the probative value of such evidence [collateral payments] is substantially outweighed by the risk of unfair prejudice." (*See* decision attached at **Exhibit H).**

## II. The Collateral Source Rule applies to Plaintiff's lost income as well.

Defendant argues that it should be allowed to present evidence showing Plaintiff's "post-tax" lost income. This is an obvious attempt to circumvent the law which provides that lost earnings are not taxable income in a personal injury action. 26 U.S.C. § 104(a)(2). Evidence of Plaintiff's post-tax lost income serves no purpose other than to allow the tax benefit bestowed on Plaintiff by Congress to transfer from Plaintiff to the Defendant. Such a result would violate the rule set out in *Coty v. Ramsey Assocs.* 149 Vt. 451, 462-63 (1988), which held that a tax benefit conveyed by a taxing authority to a claimant will not be considered in calculating the reasonable value of the claimant's losses.



Defendant's reliance on the U.S. Supreme Court's decision in *Norfolk & Western Railway Co. v. Liepelt*, 444 U.S. 490, 100 S.Ct. 755, 62 L. Ed. 2d 689 (1980) is misplaced. The

holding in *Norfolk* is limited to a federal question in actions for wrongful death brought under the Federal Employer's Liability Act ("FELA") (45 U.S.C. 51 et seq.). Id. at 490. The facts and law in the case at hand are entirely different than *Norfolk*.

The present matter is a personal injury action resulting from a motor vehicle accident and is governed by state law. This case is not railroad action involving the FELA that is governed exclusively by federal law, and it is not a wrongful death action (also a creature of statute). Moreover, the damages under the FELA have a completely different analysis than a common law tort action under Vermont law: "In a wrongful-death action under the FELA, the measure of recovery is 'the damages that flow from the deprivation of the pecuniary benefits which the beneficiaries might have reasonably received.'" Id. at 493 (citation omitted). The damages analysis argued by Defendant has been flatly rejected by the Vermont Supreme Court in *Coty v. Ramsey Assocs.*, 149 Vt. 451, 462 (1988) (a tax benefit received by plaintiffs is not material to the damages analysis). The holding in *Norfok* is not controlling law and is contrary to Vermont law.

Similarly, Defendant's reliance on the Vermont Supreme Court's decision in *Stowell v. Simpson*, 143 Vt. 625, (1983) is also inapposite to the issue at hand. In that case, the Court reversed the lower court because it refused to instruct the jury that a lost income award is not taxable income after the jury heard testimony from the plaintiff's expert that his lost income analysis incorporated a sum to "account for federal and state income taxes." Id. at 627. The Court in *Stowell* determined "that the testimony may well have instilled an impression in the  minds of jurors that their award for the plaintiff would be subject to personal income taxes once plaintiff received it." Id.

7

*Stowell* did not hold that evidence of Plaintiff's net income after taxes is admissible. Rather, the Court found that because the jury heard evidence that could lead it to conclude that plaintiff's damages are subject to taxes, an instruction was warranted that such an award is not taxable. Id. The holding in *Stowell* was revisited by the Court in *Derosia v. Verboom*, 169 Vt. 593, 594 (1999):

> In *Stowell*, the record revealed "discussion of income taxes by plaintiff's expert on several occasions." We therefore concluded that the trial court had abused its discretion in refusing to give the requested instruction. Here, by contrast, there were no taxation issues raised at trial that required clarification. We therefore find no error.

Defendant also relies on a slew of wrongful death cases from other jurisdictions that are not analogous to the present matter. The wrongful death cases cited by Defendant require a wholly different damages analysis than the case at hand.[3] For instance, Defendant relies on *Floyd v. Fruit Industries, Inc.*, 144 Conn. 659, 136 A.2d 918 (1957). In that case, the Supreme Court of Connecticut held that in wrongful death actions, probable income taxes could act as an offset to compensation owed for the decedent's future earning capacity. Id. at 669-73, 924-926.

The Connecticut Supreme Court in a later decision refused to apply this approach in measuring damages in a personal injury action:

> Error has been assigned in the court's failure to charge, as the defendant requested, that any award given the plaintiff is tax free and not subject to any income tax whatever. <u>The great weight of authority in the United States is committed to the rule that, in an action to recover damages for personal injuries, an instruction such as is now under consideration is improper and, when requested, should be refused.</u>



---

[3] One such case cited by Defendant is *Turcotte v. Ford Motor Co.*, 494 F.2d 173, 183 (1st Cir.1974) which deals specifically with a Rhode Island wrongful death statute that uses an estate-type damages measure projecting the lifetime earnings of a decedent and then deducting expenses.

*Gorham v. Farmington Motor Inn, Inc.*, 159 Conn. 576, 580-581, 271 A.2d 94, 96-97 (Conn. 1970) (emphasis added) (citations omitted). The Connecticut Supreme Court in *Gorham* limited the damages analysis applied in *Floyd* to wrongful death suits and not applicable to personal injury actions:

> In *Floyd* we held that, in computing damages for wrongful death, any saving of income tax liability which can be attributed to a permanent and total cessation of earned income must be considered. The *Floyd* case did not hold that the jury should be instructed concerning the federal tax liability of a plaintiff in respect to any award given to him in the verdict to be rendered. Thus *Floyd* is readily distinguishable and does not support the defendant's position.

Id. at 582, 97.

Defendant also cites *Runyon v. District of Columbia*, 463 F.2d 1319 (1972), where the D.C. Court of Appeals analyzed damages prescribed under D.C.'s Survival Statute and its Wrongful Death Act. The damages available under these statutes are distinguishable from the damages available to Plaintiff in the current action. The D.C. Survival Statute allows for limited statutory damages that are not analogous to a common law personal injury action. Id. at 1321. Moreover, D.C.'s Wrongful Death Act measures damages as "the amount of financial loss to the spouse and next of kin" which is determined by looking at their "annual share . . . in the decedent's earnings." Id. at 1322. The damages analysis used in *Runyon* is not compatible with the measure of damages Plaintiff is entitled to in the present matter which is non-taxable past lost income.



Similarly, Defendant relies on *Tenore v. Nu Car Carriers, Inc.*, 67 N.J. 466, 341 A. 2d 613 (1975), which also deals with statutory damages available under New Jersey's wrongful death statute. The Supreme Court of New Jersey in *Tenore* held that the decedent's net income is recoverable under its wrongful death statute. Id. at 484, 623. This analysis has been rejected

by a majority of jurisdictions. *See Great Coastal Express, Inc. v. Schruefer*, 34 Md. App. 706, 721, 369 A.2d 118, 127 (Md. Ct. Spec. App. 1977) (In discussing *Tenore*, the Court wrote "[t]he opinion is interesting but reflects a minority recognized in New Jersey, Rhode Island, and Connecticut.").

The remainder of the cases cited by the Defendant is equally unsupportive. For example, the Defendant relies on *Newmann v. United States of America*, 938 F.2d 1258 (11th Cir. 1991). *Newmann*, however, addresses post tax income on <u>future</u> lost wages. The Defendant also cites *Ruff vs. Weintraub*, 519 A. 2d 1384 (1986). *Ruff*, like *Newmann*, addresses <u>future</u> lost earnings. The Plaintiff in this action is not claiming future lost income, rather he is claiming past lost income. Finally, Defendant relies on *Monaghan v. Uiterwyk Lines, LTD.*, 607 F. Supp. 1020 (U.S.E.D. Pa. 1985). *Monaghan* is not instructive as it discussed past lost wages reduced by the effective tax rate in the context of a workers' compensation claim brought under the federal Harbor Workers' Compensation Act.

WHEREFORE, Plaintiff requests that the Court grant *Plaintiff's Motion In Limine RE: Medical Specials & Lost Wages.*

DATED at Essex Junction, Vermont this 7th day of February, 2011.

/s/ Chad V. Bonanni<br>
John J. Bergeron, Esq.<br>
Chad V. Bonanni, Esq.<br>
Bergeron, Paradis & Fitzpatrick LLP<br>
Attorneys for Plaintiff<br>
27 Main Street, P.O. Box 925<br>
Burlington, VT 05402-0925<br>
chad@essex.bpflegal.com<br>
(802) 863-1191
